BARTLE, District Judge:
This is the appeal of Dr. James S. Doran who was convicted under 18 U.S.C. § 666 of embezzlement from Florida State University (“FSU”), an organization receiving federal funds.[1] He argues that he is entitled to a judgment of acquittal. Doran maintains, among other grounds, that any embezzlement was not from FSU and that the Government did not prove that the victimized organization under the statute was a recipient of federal benefits. The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. The Court’s review of the District Court’s denial of a judgment of acquittal is de novo. See United States v. Yates, 438 F.3d 1307, 1311-12 (11th Cir. 2006) (en banc).
Section 666 provides in relevant part:
(a) Whoever, if the circumstances described in subsection (b) of this section exists—
(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
(i) is valued at $5,000 or more, and
(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency;
[[Image here]]
shall be fined under this title, imprisoned not more than 10 years, or both.
(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.
(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.
See § 666.
We' turn to the facts related to the embezzlement which we view in the light *1314 most favorable to the Government, the verdict winner. See United States v. McLean, 802 F.3d 1228, 1233 (11th Cir. 2015). Doran was a professor in the College of Business of FSU. He was also a director and officer of the Student Investment Fund (“SIF”), a non-profit corporation established by FSU for charitable and educational purposes, and had signatory authority over the SIF’s bank account.[2]
In 2010, Doran transferred $300,000 of the SIF funds to his own personal account. In anticipation of an audit of the SIF, he returned the money a few months later. In 2011, he again moved money, this time $350,000, from the SIF to his personal account. After the SIF board members discovered this transfer, he repaid the amount in full. In 2010, he had also written a SIF check for $10,000 to cover an audit of his personal account. Only as a result of an investigation and after he was confronted in 2012 did he repay the $10,000 to the SIF.[3]
The SIF was established by FSU under Florida law in 2009. The objective of the SIF, as characterized in a FSU College of Business document, was to “enrich student education through active participation in financial markets. Students assist in stock selection and management of a real portfolio.” The SIF began with approximately $300,000 donated by private sources. The FSU Foundation later added $1,000,000. The Foundation’s funds came from private donors and not from FSU.
The SIF’s Board of Directors consisted of seven directors. They included the Chair of the FSU Board of Trustees, the FSU President, and the FSU Vice President for Finance and Administration or their desig-nees, as well as the Dean of the FSU College of Business, two FSU College of Business faculty members, and a member selected by the FSU President “with significant and substantial investment experience and expertise.” The SIF maintained its own bank account, filed its own tax forms, and paid for its own audits. It tunneled no money to FSU, and FSU tunneled no money to it. Under its Articles of Incorporation, the SIF had no power “to convey, lease, pledge, or otherwise encumber assets of the State of Florida” and “The Florida State University Board of Trustees and The Florida State University assume[d] no financial liability for the [SIF].”
Although the evidence established that Doran had embezzled funds from the SIF, the indictment made no mention of the SIF. Rather, the indictment’s one count charged that Doran had embezzled or stolen property of FSU, which it described as the recipient of federal benefits.
Doran argues that his conviction must be overturned because the SIF was the victimized organization under § 666 but received no federal benefits. In Doran’s view, the SIF and FSU are separate entities. The Government concedes the point that the SIF was not the recipient of any federal funds. Nonetheless it counters that the embezzlement by Doran comes within the ambit of § 666 because the SIF was closely affiliated with FSU which did receive millions of federal dollars and that Doran, an FSU professor, was acting as an agent of FSU when he committed the crime in issue.
*1315 To sustain a conviction under § 666, the Government must prove among other elements that the organization which was victimized received federal benefits in excess of $10,000. The relevant organization under the statute is the SIF since it was the organization that was the subject of the embezzlement. The Government is mistaken in focusing on FSU as the victimized organization and in conflating FSU and the SIF. Despite the affiliation of FSU and the SIF, there is simply no evidence in the record that FSU and the SIF are alter egos so as to allow the Court to pierce the SIF’s corporate veil and to treat FSU and the SIF as one and the same. See Molinos Valle Del Cibao v. Lama, C. por A., 633 F.3d 1330, 1349-51 (11th Cir. 2011); Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1116 (Fla. 1984).
This Court’s decision in McLean is dis-positive. There, the defendant, David McLean, was charged under § 666 with accepting bribes in return for helping to obtain for the provider of the bribe a construction grant from the Margate Community Redevelopment Agency (“MCRA”). See McLean, 802 F.3d at 1231. McLean was a commissioner for the City of Mar-gate as well as a board member of the MCRA. The members of the City Commission and the MCRA Board were the same. While the MCRA was a separate legal entity, “the City was financially accountable for the MCRA and the MCRA is part of the government’s operations.” See id. at 1241.
The City received federal funds directly from the federal government, but the MCRA did not. The City, however, transferred some of its federal funds to the MCRA. For an organization such as the MCRA to be deemed the recipient of federal benefits under § 666, the Government must prove that the federal program had “a sufficiently comprehensive ‘structure, operation, and purpose’ ” and a relationship with “the ultimate use of [the program’s] funds at the local level.” See id. at 1243-44 (quoting United States v. Edgar, 304 F.3d 1320, 1325 (11th Cir. 2002)); Fischer v. United States, 529 U.S. 667, 681, 120 S.Ct. 1780, 1788, 146 L.Ed.2d 707 (2000). This Court affirmed the District Court’s entry of a judgment of acquittal on the ground that there was insufficient evidence that the MCRA had received a federal benefit as defined in Fischer and Edgar. See McLean, 802 F.3d at 1244.
McLean identified the MCRA as the relevant local organization under § 666 and not the City. It was the MCRA and not the City which was connected to the bribe at issue. Likewise, here it was the SIF and not FSU that was the target of the embezzlement. In McLean, where the governing board of the City and the MCRA were the same, the City and the MCRA had an even closer relationship than had FSU and the SIF. Yet, this Court did not conflate the City and the MCRA. The two affiliated entities in McLean were not alter egos and the two affiliated entities here were not alter egos. Moreover, the Court in McLean did not consider significant in its analysis the federal funds retained by the City for its own use. While in McLean the MCRA received some federal funds indirectly, the SIF, it must be emphasized, received no federal funding, directly or indirectly. Thus, there were no federal funds “owned by, or [] under the care, custody, or control of’ the SIF. See § 666(a)(l)(A)(ii).
The Government also argues that Do-ran’s conviction should be upheld because he was an agent of FSU. This argument fails. Again, we reference McLean. In that *1316 case, this Court did not deem defendant McLean’s role as one of the City’s commissioners to be relevant under § 666. With respect to charges under § 666, McLean was simply acting as an agent of the MCRA even though City funds had been transferred to the MCRA. In this case, Doran was a director and officer and thus an agent of the SIF. His employment as a professor at FSU was irrelevant inasmuch as he did not embezzle any FSU funds. Thus, any agency relationship he had with FSU is of no moment.
We acknowledge that § 666 is “expansive.” See Fischer, 529 U.S. at 678, 120 S.Ct. 1780. Yet, its net cannot be cast so widely as to encompass the wrongdoing that occurred here, for the Government has not demonstrated any federal interest. The Supreme Court cautioned that not “all recipient fraud” is covered under § 666. See id. at 681, 120 S.Ct. 1780. As it explained, the meaning of the term “benefits” in the statute should not be interpreted as “limitless.” See id. “Doing so would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance.” Id.
Doran has raised a number of additional grounds for reversal. For example, he questions whether the Government has proven that the federal funds FSU received were part of any program with a sufficiently comprehensive structure, operation, or purpose to meet the requirement under § 666(b) as a federal benefit. See id. In light of our above analysis, we need not reach this or any other issue.
In sum, the Government has not proven that the relevant local organization, the SIF, received any federal benefits. See § 666(b). As a result, Doran’s conviction under § 666 cannot stand.
We reverse the judgment of conviction and direct the District Court to enter a judgment of acquittal.
REVERSED AND REMANDED.

. The District Court sentenced Doran to thirteen months in prison and fined him $15,000. He was granted release pending appeal.

. The full name of the SIF, as stated in its Articles of Incorporation, is “The Florida State University College of Business Student Investment Fund, Incorporated.”

. Doran also paid the SIF $893.50 in interest.